ROBBINS, DECEASED, ESTATE OF, IN RE.

Probate Court, Cuyahoga County.

No. 617861.   Decided August 5, 1964.

*Messrs. Zellmer, Rhein & Gruber,* for applicants, Moselle Adelman and William R. Adelman.

*Messrs. Lefton & Lefton,* for executor, Ronald C. Berghauser.

ANDREWS, CHIEF REFEREE. The testator, Abe Robbins, died on November 9, 1961. His wife, Bessie Robbins, is the sole beneficiary under his will. On December 13, 1961, Ronald C. Berghauser was appointed executor of the estate.

On April 6, 1963, the executor made a partial distribution of $14,000 to Bessie Robbins, and on May 1, 1963, he made a final distribution to her of $3,671.45. These items appear in the executor's final and distributive account, filed on May 21, 1963. Section 2109.30, Revised Code, provides for this type of account in the following language:

"* * * An account showing complete administration and distribution of assets shall be designated 'final and distributive account.'"

The account showed that no balance remained in the hands of the executor. On July 8, 1963, this Court approved the final and distributive account.

The present motion, filed on April 8, 1964, by William R. Adelman and Moselle Adelman (whose name is erroneously spelled in some of the documents), seeks to vacate the order of July 8, 1963. The Court is also asked to reopen the estate for further administration, and to order the executor to retrieve sufficient assets from the distributee for the satisfaction of a debt allegedly due the Adelmans.

On April 15, 1964, the Honorable Frank J. Merrick, Presiding Judge of this Court, held a hearing on the motion, and on April 23, 1964, the deposition of William R. Adelman was taken, pursuant to stipulations of counsel. Practically all the facts are stipulated.

The Adelmans' claim arises from a cognovit note in the amount of $12,000, with interest at 8% per annum, of which note Joseph Robbins and Abe Robbins were the makers. The note is dated October 9, 1961, and is payable to the order of William R. Adelman and Moselle Adelman three years after date. In the lower left-hand corner appears the notation, "Due 10/9/64."

Although the face of the note indicates an absolute liability, the reverse side contains a clause subjecting it to certain conditions contained in a letter dated October 9, 1961, signed by Mr. and Mrs. William R. Adelman. Actually, there is no letter meeting this exact description, but there is a letter dated October 20, 1961, signed by Mr. Adelman alone and addressed to Joseph and Abe Robbins, and, undoubtedly, this letter, though inaccurately described, is the letter intended, and is part of the agreement between the payees and makers of the note. That a note and separate document executed as part of the agreement between the parties may be read together as constituting the whole of their agreement is indisputable. See, for example, *Jacobs* v. *Mitchell*, 46 Ohio St., 601, 22 N. E., 768 (1889). This is especially true where, as here, the language of the note expressly incorporates the other document. The incorporation also offsets the fact that the Robbins brothers did not sign the letter.

The letter from Mr. Adelman, after referring to the note, contains the following language:

"This note will only be executed in the event that a certain Lincoln Mortgage Company Investment Note No. 196 purchased by me from The Lincoln Mortgage Company of even date is in default. * * * This note will only serve as security for the fulfillment of the above conditions."

In addition to the statement in the letter that the note in question was given only as security for The Lincoln Mortgage Company note, there was testimony to the same effect.

The Lincoln Mortgage Company note (which will be referred to as the Lincoln note) has the same date of issue, the same amount, the same rate of interest, and the same due date as the note signed personally by Joseph and Abe Robbins. It is payable to the order of William R. Adelman and/or Moselle Adelman. The maker is The Lincoln Mortgage Company, by Joseph Robbins, President, and Abe Robbins, Secretary.

There is some discrepancy in connection with the registered number of the Lincoln note, inasmuch as the number on the note is 8X195, whereas it is sometimes referred to as number 196. However, it is clear that the parties had the same note in mind.

From the evidence, the conclusion is inevitable that the individual note of Joseph and Abe Robbins (which will be referred to as the Robbins note), although absolute on its face, was nevertheless given as security for the Lincoln note. The consideration for the notes was a loan of $12,000 by the Adelmans to The Lincoln Mortgage Company.

The mortgage company failed to pay the June 15, 1963, interest installment on its note, and a few days later an involuntary petition in bankruptcy was filed against it. Joseph Robbins has also gone into bankruptcy.

The Adelmans contend that because of the June 15, 1963, default in the payment of interest on the Lincoln note, the Robbins note became due immediately, and thus became a matured claim against the estate of Abe Robbins.

As already observed, the due date on the Robbins note was October 9, 1964. Unless that due date was accelerated, the Adelmans are wrong in their contention that the instrument became due on June 15, 1963. Mere failure to pay an installment of interest on the Lincoln note did not even accelerate the maturity of *that* note. See 10 C. J. Sec., *Bills and Notes*, Section 251, p. 746. Much less could it accelerate the Robbins note.

There is no traditionally worded acceleration clause in either note, nor in the letter from Mr. Adelman, which the Robbins note incorporates.

The only language which, by any remote possibility, could constitute an acceleration clause in Mr. Adelman's letter is the following:

"This note will only be executed in the event that a certain

Lincoln Mortgage Company Investment Note No. 196 purchased by me from The Lincoln Mortgage Company of even date is in default."

This language is followed at the end of the letter by the sentence:

"This note will only serve as security for the fulfillment of the above conditions."

Does Mr. Adelman's use of the word "executed" amount to a provision that if the maker of the Lincoln note fails to pay an installment of interest, the Robbins note will become due immediately, ahead of the October 9, 1964, due date shown on its face? A clause should not be interpreted as accelerating the maturity of commercial paper unless it clearly does so. See 10 C. J. Section, *Bills and Notes*, Section 251, p. 748; *Crumley v. Ramsey*, 93 S. W. (2d), 191 (Tex. Civ. App., 1936). And there is no such clarity in Mr. Adelman's wording. Rather, his letter appears to be stressing the point that the Robbins note was given as security for the Lincoln note, and is to have no effect whatsoever so long as the maker of the Lincoln note complies with its terms. This is a far cry from an acceleration clause.

However, in my view of the law governing the estate problems raised by the motion, it makes no difference whether the Robbins note became due on June 15, 1963, or whether it will not become due until October 9, 1964. Without deciding that point, which I understand is before the Court of Common Pleas, I will assume, for the purpose of this motion, that the note became due on June 15, 1963, as contended by the claimants, Mr. and Mrs. Adelman.

Acting upon that assumption, Mr. and Mrs. Adelman wrote a letter dated June 20, 1963, to Ronald C. Berghauser, executor of the estate of Abe Robbins. The letter was in the nature of a claim against the estate. I quote the body of it.

"Pursuant to Section 2117.37, et seq., Revised Code, the undersigned present this claim against the Estate of Abe Robbins.

"1. There is due the undersigned the sum of $12,000.00 with interest at 8% per annum from June 18, 1963, upon a cognovit note, a copy of which is hereto attached and made a part hereof

by reference, the due date being accelerated because of the default of the Lincoln Mortgage Company by failure to fulfill all of the conditions of the Lincoln Mortgage Company registered investment note dated October 9, 1961, and bearing register No. 195.

"2. Demand is made upon you to accept or reject this claim within five days from the date hereof."

After the signatures of William R. Adelman and Moselle Adelman, there appeared the following:

"Note: Our Affidavit to Account Against Estate of Decedent is enclosed for your signature."

An affidavit attached to the letter contained substantially the same language as the letter.

Mr. Berghauser, as executor of the estate, received the claim on June 22, 1963. He neither accepted nor rejected it within five days nor, for that matter, thereafter.

On July 10, 1963, William R. Adelman and Moselle Adelman brought an action in the Court of Common Pleas of Cuyahoga County (Case No. 785055) against Joseph Robbins and Ronald C. Berghauser, executor of the estate of Abe Robbins, for payment of the Robbins note. The case has wended its weary way through an interminable series of pleadings, motions, and briefs, and, at last report, was not yet at issue. During the latter part of May, 1964, Bessie Robbins, widow of the testator, was made a new party defendant in the Common Pleas Court action.

Applicants' motion to vacate is grounded upon Section 2109.35, Revised Code. I quote from that section, which is entitled, "Effect of order settling account."

"The order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only as follows:

"(A) Such order may be vacated for fraud, upon motion of any person affected thereby, * * * if such motion is filed within one year after discovery of the existence of the fraud.

"(B) Such order may be vacated for good cause shown, other than fraud, upon motion of any person affected thereby who was not a party to the proceeding wherein such order was made and who had no knowledge of such proceeding in time to appear therein. * * * A person affected by an order settling

an account was a party to the proceeding wherein such order was made if such person shall be deemed to have been served with notice of the hearing thereon in accordance with Section 2109.33, Revised Code * * *''

Admittedly, neither Mr. nor Mrs. Adelman was served or notified personally of the filing of the executor's final and distributive account on May 21, 1963, nor of any hearing thereon prior to its approval by the Probate Court on July 8, 1963.

Section 2109.35, Revised Code, also contains the following paragraphs:

''A motion to vacate an order settling an account shall set forth the items of the account with respect to which complaint is made and the reasons for complaining thereof, verified by affidavit.

''An order settling an account shall not be vacated unless the court determines that there is good cause for doing so and the burden of proving good cause shall be upon the complaining party.''

In their motion and the accompanying affidavit, the first and main contention of claimants is that the payment and distribution evidenced by the final account was contrary to Section 2113.53, Revised Code, requiring the executor to set aside enough assets to protect claimants before making a distribution to a legatee. The payment and distribution being thus violative of the statute, they argue, the final account (meaning the final and distributive account) is not a true and correct account. They state that the ''mistake'' and violation of the statute first became known to them on April 2, 1964.

Section 2113.53, Revised Code, reads as follows:

''When six months have expired after the appointment of an executor or administrator * * *, and when all debts are paid, except debts not due and payable, and claims rejected within two months or in suit, and when provision has been made as prescribed in Section 2117.28, Revised Code, for any debts which are not due and payable, the executor or administrator may provide for the payment of such rejected claims and claims in suit by setting aside enough assets for that purpose, to the satisfaction of and in the manner directed by the probate court. Having done so, such executor or administrator

may distribute to the legatees entitled thereto under the will * * * in cash or in kind, any part or all of the assets of the estate not set apart as provided in this section and not required for any other purpose. Each legatee or distributee is liable to return such assets, or the proceeds therefrom, should they be necessary to pay any such rejected claims or claims in suit.

\* \* \*

"* * * In any case where the executor or administrator may set aside assets as provided in this section, the court, upon its own motion or upon application of the executor or administrator, as a condition precedent to any distribution, may require any legatee or distributee to give a bond to the state with surety approved and in an mount fixed by the court, conditioned to secure the return of assets to be distributed, or the proceeds therefrom or as much thereof as may be necessary to satisfy the claims that may be recovered against the estate, and to indemnify the executor or administrator against loss and damage on account of such distribution. Such bond may be in addition to the assets to be set aside or partially or wholly in lieu thereof, as the court shall determine."

As mentioned before, the executor made a partial distribution to Bessie Robbins on April 6, 1963, and a final distribution on May 1, 1963. These distributions took place long after the six months period prescribed by the above statute. So far as appears, there were, at the dates of distribution, no claims for debts not due and payable, no claims rejected within two months, and no claims in suit. Under those conditions, Section 2113.53, Revised Code, authorizes the executor to make distribution. And Section 2109.30, Revised Code, states:

"When a fiduciary is authorized by law * * * to distribute the assets of the estate * * *, in whole or in part, he may do so and include a report of such distribution in his succeeding account."

It is true that Section 2113.53, Revised Code, requires each legatee or distributee to return the assets received by him, or the proceeds therefrom, "should they be necessary to pay *any such rejected claims or claims in suit.*" (Emphasis mine.) But a reading of the section makes it clear that the reference is only to rejected claims, and claims in suit, at the time of the

distribution, and that the provision has nothing to do with claims which are still contingent.

To the contrary, the legislature has seen fit to treat contingent claims as a separate entity. And by "contingent claims," the legislature means claims contingent *at the time of decedent's death,* upon which a cause of action subsequently accrues. (Emphasis added.) Section 2117.37, Revised Code.

The basic statute on the presentation and allowance of claims, Section 2117.06, Revised Code, makes this exception.

"Claims which are contingent need not be presented except as provided in Sections 2117.37 to 2117.42, inclusive * * *"

If it be argued that the contingent claim statutes deal with presentation only, and therefore have nothing to do with distribution or the liability of a distributee to return assets, one need only study those statutes to be disabused of any such idea.

I will start by quoting the first part of Section 2117.37, Revised Code.

"If a claim is contingent at the time of a decedent's death and a cause of action subsequently accrues thereon, such claim must be presented to the executor * * * in the same manner as other claims, before the expiration of four months after the appointment of the executor * * * or before the expiration of two months after the cause of action accrues, whichever is later, except as provided in Section 2117.39, Revised Code."

Without, for the moment, getting into the exception, let us apply this statute to the present case. The Adelmans had a claim which was contingent at the time of the testator's death. According to their theory (which, for the purposes of this opinion only, I am assuming to be correct), the claim matured on June 15, 1963. The claim was received by the executor on June 22, 1963, well within the statutory limit of two months after the cause of action accrued. The executor did nothing about it although the claim included a demand upon the executor to accept or reject the claim within five days from its date.

Section 2117.37, immediately after the language quoted above, continues:

"The executor or administrator shall allow or reject such claim in the same manner as other claims are allowed or rejected."

The second paragraph of Section 2117.11, Revised Code, entitled *Rejection of a claim,* reads as follows:

"A claim is rejected if the executor or administrator, on demand in writing by the claimant for an allowance thereof within five days, * * * fails to give to the claimant within such period, a written statement of the allowance of such claim. Such rejection shall become effective at the expiration of such period."

It is apparent from these quotations that the Adelmans' claim was rejected on June 27, 1963. Section 2117.37, Revised Code, also takes care of this situation.

"* * * If the claim is rejected, the claimant shall commence an action thereon within two months after such rejection or be forever barred from maintaining an action thereon."

I have already noted that on July 10, 1963, the Adelmans brought an action on the Robbins note in the Court of Common Pleas against Joseph Robbins and Ronald C. Berghauser, executor of the estate of Abe Robbins. This was within the two months limit. The only trouble was that no assets remained in the estate. The statutes on contingent claims likewise cover this eventuality.

Section 2117.38, Revised Code. *Assets from which payment to be made.*

"If an executor or administrator has made a partial distribution of the assets of the estate at the time a claim is presented under Section 2117.37, Revised Code, and if the claim is allowed or after rejection is found to be due from the estate, but the assets remaining in the possession of the executor or administrator are insufficient to pay the claim in full, the assets remaining shall first be exhausted before proceeding to recover against the distributees of the assets of the estate. If a contingent claim is allowed or if after rejection it is found to be due from the estate, the creditor may bring an action thereon to recover from the distributees of the decedent's estate as provided in Sections 2117.41 and 2117.42, inclusive (*sic.*), Revised Code, within two months after the final payment on account thereof by the executor or administrator, if such recovery is necessary for the payment of the claim in full."

Although this statute deals with the situation where a partial distribution has been made, its analogy to the case where

a complete distribution has been made is manifest. If assets cannot be retrieved from a distributee in order to make up the balance due after a partial payment by the executor, no more can they be retrieved where there are no assets in the estate with which to make even a partial payment. Clearly, the legislative remedy is against the distributees, or, as in the instant case, the distributee.

But we need not rely alone on the analogy arising from Section 2117.38, Revised Code. There are still more statutes relating to contingent claims. It will be recalled that Section 2117.37, Revised Code, dealing with the presentation of contingent claims which subsequently accrue, contains the clause "except as provided in Section 2117.39, Revised Code."

The latter section is entitled "Contingent claims not to be presented," and reads as follows:

"If at the time a cause of action accrues on a contingent claim against a decedent's estate, or if within two months thereafter an account of final distribution has been filed, no claim need be presented to the executor or administrator and the claimant may proceed by civil action against the distributees of the decedent's estate as provided in Sections 2117.41 and 2117.42, Revised Code."

Inasmuch as the account of final distribution was filed on May 21, 1963, and by the claimants' own contention the contingent claim did not accrue until June 15, 1963, it is obvious that the statute applies and that no presentation was necessary. Instead, the claimants had the right to proceed by civil action against the distributee. However, as already seen, they did present the claim and did bring suit against the executor, who had no assets left in the estate. This leads us to Section 2117.40, Revised Code, entitled "Estate of deceased in the hands of heirs."

"If a cause of action on a contingent claim accrues after the settlement of an estate or at such time that a claim thereon does not have to be presented to the executor or administrator, or if a contingent claim is presened to the executor or administrator as provided by Section 2117.37, Revised Code, but the assets of the estate are insufficient for payment of the claim in full, then the heirs, next of kin, surviving spouse as next of kin, devisees, and legatees shall be liable for the payment of such

claim or the unpaid balance thereof in an action in the court of common pleas as provided in Sections 2117.41, and 2117.42, Revised Code.''

Under the assumption that the Adelmans' claim matured on June 15, 1963, the first situation set forth in the statute does not apply, for the final and distributive account was not approved until July 8, 1963, and it cannot be said that the estate was settled until that approval.

However, as already noted, the second situation set forth in the statute is present; namely, the claim accrued at such time that it did not have to be presented to the executor, because, at the time of its alleged accrual, an account of final distribution had been filed. See Section 2117.39, Revised Code. Under these circumstances, says Section 2117.40, Revised Code, the legatees and other enumerated classes ''shall be liable for the payment of such claim.''

The third situation included in the statute is also present, for the claim was presented to the executor as provided by Section 2117.37, Revised Code, and the assets of the estate were insufficient for payment of the claim in full (in fact there were no assets left), with the same resultant liability upon the legatees and others enumerated. From the wording of Section 2117.40, Revised Code, as a whole, it is clear that the phrase ''assets of the estate'' means assets remaining in the estate, rather than assets originally in the estate. And any other interpretation would make this section completely inconsistent with the other contingent claim sections.

Section 2117.41, Revised Code, referred to in Sections 2117.38, 2117.39 and 2117.40, Revised Code, prescribes the following, in part:

''A claimant whose cause of action accrues as provided in Section 2117.37, Revised Code, may bring suit to recover thereon against the heirs, next of kin, surviving spouse as next of kin, devisees, and legatees under the decedent's will, each of whom shall be liable to the claimant in an amount not exceeding the value of the real and personal estate that he received under the will or on distribution of the estate.''

We need not concern ourselves with Section 2117.42, Revised Code, because that section deals with multiple liability,

whereas in the present case, Bessie Robbins is the only person made liable by the statutes.

From a study of the sections relating to contingent claims, it is apparent that if an executor has lawfully distributed a part or all of the estate assets, the distributee is not required to return them. Instead, the claimant's remedy for any deficiency is by an action against the distributee.

The contrast between the contingent claims sections and Section 2113.53, Revised Code, is significant. As to claims rejected within two months or claims in suit, the latter section requires the distributee to return the assets or their proceeds if necessary for payment of the claims. There is no such requirement in the contingent claims statutes. We have no right to read such a requirement into them.

Claimants' contention that the distribution was illegal and that the distributee must return sufficient assets to cover the claim is erroneous.

In their brief, claimants complain that the executor failed to notify them of the hearing date for the approval of the final and distributive account, as required, they say, by Section 2109.36, Revised Code, and permitted the Court to approve the final account ignorant of the outstanding claim against the estate.

So far as Section 2109.36, Revised Code, is concerned, it has no pertinence to this case. It deals with an application for an order of distribution made by the fiduciary to the Probate Court. No such application was made by Mr. Berghauser. And, as we have already seen, a fiduciary may make distribution without a court order.

In case claimants are thinking about Sections 2109.32 and 2109.33, Revised Code, I will discuss them briefly.

Section 2109.32, Revised Code, directs that a fiduciary's account be set for hearing before the Probate Court and that the Court shall cause notice of the filing of such account and the time and place of the hearing thereon to be published in some newspaper of general circulation in the county. This was done in the present case.

Section 2109.33, Revised Code, permits a fiduciary to serve an additional notice of the hearing upon any person interested

in the estate. Such an additional notice was not served in this case, but inasmuch as Section 2109.33, Revised Code, is permissive only, and not mandatory, the claimants were not prejudiced.

Section 2109.32, Revised Code, also contains the following:

"If, at the hearing upon an account, the court finds that the fiduciary has fully and lawfully administered the estate * * * and has distributed the assets thereof in accordance with the law * * *, the court shall order the account approved and settled * * *"

We have already seen that the executor distributed the assets according to law, and the Court acted properly in approving the account. Since, by the contingent claims statutes, the distributee was under no duty to return the assets received by her, failure by the executor to apprise the Court of the Adelman claim would not be prejudicial to the claimants.

A third complaint is registered by the claimants in their affidavit. They alleged that from the time they filed their action in the Court of Common Pleas, Mr. Berghauser, as executor, has been filing pleadings without any indication that he had distributed the assets of the estate and filed a final account. They specify, particularly, that on March 20, 1964, the executor filed a demurrer without indicating the distribution or the filing and securing approval of the final account. They say that this was done "for the sole purpose of deceiving the Affiants, and to prevent them from collecting their claim when the Executor knew, or should have known, that Section 2113.53, Revised Code, provided that an Executor could not make complete distribution following his appointment without complying therewith and setting aside enough assets for the purpose of protecting the Affiants." They add that the conduct of the executor constituted gross negligence or intentional fraud.

Like the other matters complained of, this one is based chiefly upon the argument that the executor was acting illegally in making the distributions without setting aside assets to cover the contingent claim of the Adelmans. But we have already seen that the executor was under no duty to set aside assets for that purpose, and that his distributions were entirely lawful. That being so, it is impossible to conclude that his conduct was either fraudulent or grossly negligent.

Moreover, the records in the estate of Abe Robbins could easily have been examined by claimants, and such a long time had elapsed between the appointment of the executor and the filing of the action in the Court of Common Pleas, to say nothing of the many months since, that their failure to look into the matter is, to say the least, surprising.

Section 2109.35, Revised Code, permits the vacation of the order of the Probate Court upon the settlement of a fiduciary's account for fraud or good cause shown, other than fraud.

I will quote again a part of the statute.

"A motion to vacate an order settling an account shall set forth the items of the account with respect to which complaint is made and the reasons for complaining thereof, verified by affidavit.

\* \* \*

"An order settling an account shall not be vacated unless the court determines that there is good cause for doing so and the burden of proving good cause shall be upon the complaining party."

The gist of the complainants' grievance is the unlawfullness of the executor's distributions because of not setting aside assets to meet complainants' contingent claim. It has been shown that the distributions and other actions of the executor were lawful and that the final and distributive account was properly approved. There is no legal basis for vacating the order made by this Court on July 8, 1963, nor for directing the executor of the estate of Abe Robbins to retrieve assets from Mrs. Bessie Robbins for the satisfaction of a debt allegedly due the claimants.

I recommend that the motion be denied.