OPINION
On September 17, 1998, appellee, Howard V. Humitsch, filed a complaint in the Lake County Court of Common Pleas against appellants, Cheryl Anne (aka "Cheryl") and Bruce Collier, and Sarducci's Pizza. In his complaint, appellee alleged that he had loaned appellants $20,000, but that they violated their agreement to repay and owed him $13,750. Appellee is the cousin of Cheryl Anne Collier's mother. Bruce Collier is Cheryl Anne Collier's husband. Sarducci's Pizza was the name of the pizza shop operated by the Colliers. A corporation, whose sole shareholder was Cheryl Collier, named SBC Management, Inc. ("SBC") owned Sarducci's Pizza, but SBC was not a party to the cause of action. A bench trial was held on April 30, 1999.
At trial, it was established that appellee met with appellants and wrote a check, dated June 12, 1994, for $20,000 with the name of the payee portion left blank and the word "loan" written in the memo portion of the check. Appellants later filled in the name "Cheryl Collier." Appellee testified that Cheryl Collier called him to ask him for a loan, but Cheryl testified that appellee called her to ask if he could give her a $20,000 gift. She further testified that: she was not a close relative of appellee; she had only met him a few times through her mother before he offered her the gift; and, she would not have felt right about accepting the gift and insisted upon repaying it. Deborah Geiss, appellee's granddaughter, testified that she was present at the meeting, heard nothing about the $20,000 being a gift, and heard appellee instruct appellants about repayment of the loan in the event that anything happened to him.
Cheryl Collier's testimony regarding repayment of the loan was as follows:
 "[A]t the time, we thought we could do $200 a month. But I also told him that it was if we were able to pay that at the time because there is ups and downs in the business and it might not always be feasible to do that and we would pay him what we could, but I also told him that no matter what I would pay him back. [sic]"
Although the parties understood that the loan was made in part to enable appellants to pay business debts, appellee testified that "it was not a business loan" and that "it was a personal loan to them because of my relationship with [Cheryl's] mother." The extent of their agreement about interest was, according to appellee's testimony, that appellee told them "we can figure that out at the end of the payments."
Cheryl Collier deposited the entire $20,000 into her personal bank account. Of the $20,000, $4,500 of the loan proceeds remained in her personal account. Part of the remaining $15,500 went into Sarducci's checking account and the rest was used to pay business debts. Although Cheryl was the sole shareholder in SBC, Bruce Collier operated the pizza shop. If there were ever problems with repayment, appellee would discuss them with Bruce, not Cheryl. Appellants began repaying the loan on June 29, 1994 and made regular monthly $200 payments until February 1995. They missed payments in February and March 1995 because Cheryl had broken her ankle. The parties agreed that appellants could make up for the missed payments with bigger payments in subsequent months. Appellants made a total of seven payments totaling $1,950 in 1995. Their payments became more irregular in 1996, when they made eight payments totaling $1,600. For most of 1997, appellants made regular monthly $200 payments, until they made their last payment on November 17, 1997.
After November 1997, appellants stopped making payments because they claimed that their business was losing money. Appellee asked them to pay what they could and said it would be acceptable for them to pay $100 per month until their business improved. On August 24, 1998, Bruce Collier instructed Cheryl to write appellee a check for $100 from Sarducci's account, which was the final payment appellee received before filing the complaint. Appellants paid a total of $6,250 of the loan.
On May 7, 1999, the trial court rendered judgment in favor of appellee against the Colliers and SBC Management, Inc. for $13,750 plus interest of ten-percent per annum from December 1, 1997. Pursuant to appellants' motion, the trial court issued findings of fact and conclusions of law on June 16, 1999. Appellants raise the following assignments of error:
 "[1.] The trial court erred in rewriting the contract of the parties and adding terms thereof.
 "[2.] The trial court erred in holding defendant Bruce Collier personally liable for plaintiff's claim.
"[3.] The court erred in `reverse piercing' the corporate veil.
 "[4.] The court erred in not finding appellee's claim barred by the statute of frauds.
 "[5.] The judgment of the court is contrary to the manifest weight of the evidence."
We will address appellants' fourth assignment of error first. In that assignment, appellants assert that the trial court erred by not declaring the contract void under the statute of frauds. Appellants argue that the contract they had with appellant was, by its terms, incapable of being performed within one year and, thus, unenforceable if not in writing. See R.C. 1335.05.
"An alleged oral agreement to pay money in installments is `an agreement that is not to be performed within one year' pursuant to R.C.1335.05 when the installment payment obligation exceeds one year."Sherman v. Haines (1995), 73 Ohio St.3d 125, 652 N.E.2d 698, syllabus. Such an agreement falls outside of the statute where the time of payment under the agreement is indefinite or dependent upon a contingency which may happen within one year. Id. In the instant case, the agreement between the parties was neither indefinite with regard to it not being repaid within one year nor based upon a contingency and made no provision for the possibility of an early payoff. It was, therefore, within the statute of frauds.
Although appellants properly raised the affirmative defense of the statute of frauds in their answer, they did not dispute that they owed the money at trial. Cheryl Collier admitted on the stand that appellee loaned them $20,000 and appellants' attorney argued to the court that "there is no dispute that the money is owed by somebody and that the question is how much is owed at this point." Thus, there is no question that the $20,000 was a loan that appellee expected appellants to repay, not a gift. Appellant's fourth assignment of error is without merit.
In their first assignment of error, appellants assert that the trial court erred by adding terms to the parties' contract. Specifically, they argue that the trial court erred by implying an interest term and by ruling that the entire contract, which was an installment contract, had been breached when all of the installments had not become due and there was no acceleration clause in the contract. They also argue that the court erred by holding Bruce Collier personally liable, which we will address in the second assignment of error.
Appellants argue that under the law in Ohio, an agreement to pay off a loan in installments creates a separate obligation as to each installment. According to their argument, without an agreement to accelerate the payment of the entire debt, the failure to pay a single installment does not constitute default of the entire agreement and mature an obligation to immediately pay the entire debt. In other words, breach of an installment payment contract by nonpayment is not a total breach of contract.
In support they cite the following cases: The Elworthy-Helwick Co. v.Hess (1918), 9 Ohio App. 200 (holding that when a promissory note is made payable in installments the promise to pay each installment is a separate note in itself); General Development Corp. v. Wilber-Rogers AtlantaCorp. (1971), 28 Ohio App.2d 35, 273 N.E.2d 908 (holding that recovery for a monthly installment of rent, that being all that was due at the time action was commenced, is not a bar to recovery for installments subsequently coming due upon the lease); In re Estate of Robbins (P.C. 1964), 94 Ohio L.Abs. 561, 200 N.E.2d 735 (holding that mere failure to pay an installment of interest on an unaccelerated promissory note did not accelerate the maturity of that note); and, Market Control Systems, Inc.v. Vertucci (Apr. 8, 1992), Summit App. No. 15290, unreported (which allowed relief from judgment where a trial court implied an acceleration clause in a promissory note where none existed). In response, appellee cited no authority to support the trial court's decision to accelerate the payment of the entire contract. In his brief, he merely argues: "[i]t was reasonable for the court to accelerate payment of a debt upon non payment."
The cases cited by appellant address promissory notes and monthly rent installments, neither of which are presented by the current case. As the trial court noted in its findings of fact: "The money to be obtained by the [Colliers] was to be a loan * * *. The loan was to be repaid at the rate of $200 per month." Thus the trial court labeled the arrangement between the parties as an installment loan.
All of the case law we have found regarding loans repayable in installments indicates that the general rule is that each default in payment may give rise to a separate cause of action, Eden Realty Co. v.Weather-Seal, Inc. (1957), 102 Ohio App. 219, 224, 142 N.E.2d 541, and breach of an installment payment contract by nonpayment is not a total breach of contract. General Dev. Corp. v. Wilber-Rogers Atlanta Corp.
(1971), 28 Ohio App.2d 35, 273 N.E.2d 908. Parties can avoid the operation of this rule by inclusion of a so-called acceleration clause in their agreement. Buckeye Fed. S L Assn v. Olentangy Motel (Aug. 22, 1991), Franklin App. No. 90AP-1409, unreported. The parties in the case at bar did not include an acceleration clause in their agreement, which by all accounts was very informal. Therefore, the trial court erred by rendering judgment for the full amount of the contract rather than just the unpaid installments that were past due.
Under R.C. 1343.03(A), a contract creditor is entitled to statutory interest at the rate of ten percent per annum on a judgment for a breach of contract, regardless of whether any interest is stipulated in the contract. Prejudgment interest accrues from the time the amount of the debt is clear and certain. Allied Erecting Dismantling Co. v. AutoBaling Co. (1990), 69 Ohio App.3d 502, 507, 591 N.E.2d 259. Thus, interest on the unpaid installments is only proper from the dates on which each became due. Appellants' first assignment of error has merit.
In their second assignment of error, appellants assert that there was no evidence to prove that Bruce Collier was liable on the debt to appellee. Although only Cheryl Collier's name appeared on the check given by appellee, the evidence was sufficient to support a conclusion that the oral agreement was between appellee and both Cheryl and Bruce Collier. Bruce Collier was present at the negotiations, appellee gave both parties the check and did not fill in a specific name, and appellee made the loan in part because of problems with the pizza shop that Bruce was running. Appellants' second assignment of error is without merit.
In their third assignment of error, appellants assert that the trial court erred by holding SBC, which was not a party to the lawsuit, liable for the personal debt of its shareholder. Only parties to a contract may be held liable under it. "A corporation is a separate legal entity from its shareholder even where there is only one shareholder in the corporation." Zimmerman v. Eagle Mtge. Corp. (1996), 110 Ohio App.3d 762,771, 675 N.E.2d 480. As an artificial person, a corporation does not speak on its own, but, rather, only through the authorized acts of its agents or alter egos, the officers charged with its management. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 627,605 N.E.2d 936. Although Cheryl Collier probably had the power to bind SBC to a contract with appellee, appellee testified that his arrangement with appellants was a personal loan, not a business loan to the corporation. It appears that the trial court held SBC, which was not a party to the cause of action, liable on the contract under a "reverse piercing" of the corporate veil theory.
Normally piercing the corporate veil works to hold owners of a corporation personally liable for corporate debts when: control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own; control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and, injury or unjust loss resulted to the plaintiff from such control and wrong. Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274,617 N.E.2d 1075, paragraph three of the syllabus. In the instant case, the trial court held SBC liable for the debt of its shareholder.
Under the "reverse piercing" theory advanced by appellee and the trial court, appellee was seeking to reach the corporate assets of appellants, even though the corporation was not a party to the contract. This approach has been allowed in limited cases where the corporation was found to be the alter ego of its controlling shareholders and a creditor has been allowed to reach assets of the corporate entity to satisfy the debts of the controlling alter ego. LiButti v. U.S. (C.A. 2 1997), 107 F.3d 110,119, affirmed in part and reversed in part on other grounds (1999),178 F.3d 114; Century Hotels v. United States (C.A. 5 1992), 952 F.2d 107,110. To "reverse pierce," the same factors are used as for traditional corporate veil-piercing, as set forth in Belvedere. Although appellee presented evidence that he was paid with checks drawn from the pizza shop's bank account, he did not present any evidence that would prove that SBC was the alter ego of Bruce and Cheryl Collier. Furthermore, SBC was not a party to the lawsuit and could not be held liable unless properly joined. Therefore, the trial court erred by holding SBC liable for Bruce and Cheryl Collier's debt. Appellants' third assignment of error has merit. This case should be remanded for the trial court to vacate the judgment against SBC Management, Inc.
In their fifth assignment of error, appellants assert that the trial court's findings were against the manifest weight of the evidence for reasons spelled out in their other four assignments of error, which we previously addressed. Appellants' fifth assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed on the second, fourth, and fifth assignments of error and reversed on the first and third assignments of error. This case is remanded for further action consistent with this opinion.
 _________________________________ NADER, J.
FORD, P.J., concurs, CHRISTLEY, J., dissents with Dissenting Opinion.