**NORTH AMERICAN PUMP CORPORA-
TION, a North Dakota corporation,
Plaintiff and Respondent,**

v.

**CLAY EQUIPMENT CORPORATION, a for-
eign corporation, Defendant and Appellant.**

**Civ. No. 8738.**

Supreme Court of North Dakota.

July 27, 1972.

Nelson, Mack & Moosbrugger, Grand Forks, for plaintiff and respondent.

Degnan, McElroy, Lamb & Camrud, Grand Forks, for defendant and appellant.

STRUTZ, Chief Justice.

This action was brought for damages claimed due for breach of contract. The plaintiff, a sales and service corporation engaged in selling farm implements and industrial equipment, asserts that it had an oral contract with the defendant, a manufacturer of such equipment, which contract, the plaintiff alleges, gave to it the exclusive right to sell defendant's products within a specified territory which was, roughly, the northern half of North Dakota and a small area in northwestern Minnesota. The plaintiff's offices are located in the

city of Grand Forks, and George Bowman is its president.

The defendant denies that the plaintiff had any exclusive contract to sell its products and even denies that any arrangement it had with the plaintiff amounted to a contract because of lack of mutuality and consideration.

Although there is conflicting testimony as to just when such contract was consummated, it appears that sometime during the latter part of 1964 the parties did negotiate with a view of having the plaintiff sell the defendant's products. Mr. Bowman, president of the plaintiff corporation, and Gordon Thompson, an authorized agent of the defendant, met and discussed the possibility of the plaintiff's becoming a dealer for the purpose of handling defendant's products. A credit arrangement was approved, after which it was orally agreed that the plaintiff could obtain the defendant's equipment on credit, and the plaintiff was supplied with a Clay Equipment Corporation catalog of equipment and parts. Although this is denied by the defendant, the plaintiff further claims that the agreement allegedly entered into by the parties included a provision that the plaintiff was to be the exclusive Clay Equipment Corporation dealer in a specified area covering the northern half of the State of North Dakota and a small section of northwestern Minnesota which embraced the city of Crookston.

According to Mr. Bowman, in consideration of his right to purchase Clay products from the defendant on credit, the plaintiff agreed with the defendant to do a certain amount of radio and newspaper advertising, to attend winter farm shows for the purpose of displaying and promoting Clay equipment, to attend Clay dealership schools, to follow up prospective customer leads and inquiries furnished by the defendant, and to put forth its "best efforts" to promote and sell the defendant's products.

Shortly after such agreement was entered into, the plaintiff hired one Morris Jensen as salesman, and Jensen spent much of his time and effort while employed by plaintiff in promoting and selling Clay equipment. Jensen continued working in the plaintiff's employ until July 1967, when he left North American Pump Corporation in order to work for A & J Supply Company of Grand Forks, of which he was a part owner.

Shortly after Jensen had left the plaintiff's employ, Bowman became aware that A & J Supply was advertising Clay products. However, it was not until five or six months thereafter that the plaintiff was finally notified by letter from Thompson that the defendant was terminating its agreement with the plaintiff and was designating Mr. Jensen's company as its Grand Forks dealer. The plaintiff thereupon brought this action for breach of contract.

The case was tried to a jury, which returned a verdict for the plaintiff of $3,000. After entry of judgment, the defendant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, which motion was denied. The defendant then brought this appeal from the judgment and from the order denying motion for judgment notwithstanding the verdict or for a new trial.

■ This court recently considered an appeal from an order denying motion for judgment notwithstanding the verdict. In an opinion by the Honorable Obert C. Teigen, we stated that if there was an issue of fact for the jury to determine and the jury returned its verdict thereon, the motion for judgment notwithstanding the verdict should be denied. We also pointed out that in considering the evidence, we must view it in the light most favorable to the verdict. Farmers Union Grain Terminal Ass'n v. Briese, 192 N.W.2d 170 (N.D.1971).

■ The only grounds to be considered on an appeal from an order denying a

motion for judgment notwithstanding a verdict are those which were assigned on a motion previously made for directed verdict. Farmers Union Grain Terminal Ass'n v. Briese, *supra*; Hanson v. Fledderman, 111 N.W.2d 401 (N.D.1961); Leach v. Kelsch, 106 N.W.2d 358 (N.D.1960).

After a careful and exhaustive review of the record and the evidence in this case, we conclude that the defendant, Clay Equipment Corporation, was not entitled to a directed verdict when such motion was made at the close of the plaintiff's case and renewed at the close of all the evidence. Therefore, we hold that the trial court did not commit error in denying the defendant's motion for judgment notwithstanding the verdict.

We now turn our attention to the numerous specifications of error assigned by the defendant and appellant. These specifications set forth errors of law which the trial court is claimed to have committed in the trial of the action. The appellant further specifies in what respects the evidence is insufficient to sustain the verdict returned by the jury. Considering all of these specifications, we find that three general issues are presented by the appellant on this appeal:

1. That the evidence adduced at the trial fails, as a matter of law, to prove the existence of an exclusive sales contract from the defendant to the plaintiff; and that the evidence does show, as a matter of law, a complete failure of consideration and lack of mutuality between the parties, and that the alleged agreement which the plaintiff asserts the parties entered into was void and unenforceable;

2. That, as a matter of law, the evidence produced by the plaintiff to prove damages was incompetent and inadmissible, and that damages were speculative, uncertain, and incapable of being ascertained; and

3. That errors committed by the trial court in the trial of this action were so prejudicial to the defendant that when considered in a combined sense they deprived the defendant of a fair trial, and that the defendant therefore should be granted a new trial.

We first will consider whether the evidence adduced at the trial fails, as a matter of law, to establish an exclusive sales contract between the parties and whether, as urged by the defendant, there was a complete failure of consideration and lack of mutuality of agreement between the parties so as to make the agreement unenforceable.

The defendant asserts that an exclusive sales contract may be acquired only by unequivocal terms or by necessary implication, and that the agreement between the parties in this case does not meet these requirements. It further contends that if such agreement was, in fact, entered into, it was without force or effect since it was oral and not to be performed in one year, and therefore it was invalid under the statute of frauds.

■ On an appeal from an order denying a motion for new trial, the evidence must be considered in the light most favorable to the verdict. Farmers Union Grain Terminal Ass'n v. Briese, supra; Tennyson v. Bandle, 181 N.W.2d 687 (N.D.1970); Lembke v. Unke, 171 N.W.2d 837 (N.D. 1969).

■ Examining the evidence in the light most favorable to the verdict, we hold that the jury could reasonably find, by inference, that a contract for an exclusive dealership had been entered into by the parties. Mr. Bowman, president of the plaintiff corporation, testified that it was the intention of the parties that the plaintiff be granted an exclusive dealership. He pointed out that, pursuant to such agreement, all prospective customers in the territory to which the plaintiff was given exclusive rights, who contacted the defendant corporation, were referred by it to the plaintiff. In addition, there was introduced in evidence a letter from the defendant termi-

nating the plaintiff's contract, in which letter the defendant informed the plaintiff that it wasn't producing enough business for the defendant, adding: "We feel we are losing out real bad in your area." The letter then concluded by stating that Morris Jensen had been signed as the defendant's new dealer.

Now, if the defendant did not feel that its agreement with the plaintiff gave to North American Pump Corporation an exclusive dealership in the territory, why was it necessary to notify the plaintiff that the defendant no longer could use it as a Clay dealer?

In the light of the above evidence, the jury could reasonably infer that the plaintiff had an exclusive area in which it was authorized to sell the defendant's heavy equipment.

The defendant correctly points out that the agreement between the parties was oral, and that it had been in effect for more than one year. The appellant asserts that since the agreement was for the employment of the plaintiff as its agent for more than one year, it was void under the statute of frauds.

■ Section 9–06–04, North Dakota Century Code, provides:

"The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof;

.     .     .     .     .     .

This court has held that where parties enter into an agreement by the terms of which one party is to perform services for the other, and the contract neither expressly nor impliedly fixes the time of its duration, it may be terminated by either party by the giving of notice to the other.

Myra Foundation v. L. A. Harvey and Associates, 100 N.W.2d 435 (N.D.1960). Other courts have reached the same conclusion. C. C. Hauff Hardware, Inc. v. Long Manufacturing Co., 257 Iowa 1127, 136 N.W.2d 276 (1965); Jackman v. Military Publications, Inc., 234 F.Supp. 217 (E.D.Pa.1964); Mayflower Air-Conditioners, Inc. v. West Coast Heating Supply, Inc., 54 Wash.2d 211, 339 P.2d 89 (1959); Stutzman v. C. A. Nash & Son, Inc., 189 Va. 438, 53 S.E.2d 45 (1949).

■ Since the agreement could have been terminated by either party on reasonable notice, we hold that the agreement was not within the statute of frauds, even though it was not terminated within one year of its commencement. An oral agreement is not within the statute of frauds where it is terminable by either party at any time. 37 C.J.S. Frauds, Statute of § 62c, p. 570; Harrell v. Horton, 401 P.2d 461 (Okl.1965).

■ The defendant further asserts that the court must find against the existence of a valid contract, as a matter of law, because of lack of consideration and mutuality. We do not agree. Viewing the evidence in the light most favorable to the verdict, we have found that a valid exclusive dealership contract did exist. The consideration for the contract was that, in exchange for the plaintiff's right to purchase the defendant's equipment on credit and to sell it in the exclusive area assigned to it, the plaintiff was bound to do a certain amount of advertising, to attend winter shows for the purpose of displaying and promoting the defendant's equipment, to attend the defendant's dealership schools, and to exercise its "best efforts" to sell the defendant's equipment. Such agreement must have been mutually satisfactory because the parties continued to operate under it for approximately three years.

■ The defendant contends that the plaintiff's promise to exercise its "best efforts" to sell defendant's equipment is so indefinite and so loosely worded that, in

effect, it means nothing. Our own Legislature recognized the term "best efforts" as a statement of valid consideration for contracts giving an exclusive right to deal in goods when it enacted Section 2–306, Uniform Commercial Code, as Section 41–02–23 of the North Dakota Century Code. Although the Uniform Commercial Code did not become law in North Dakota until July 1, 1966, after the effective date of this contract, it is interesting to note the commentary on subsection 2 of Section 2–306 in Anderson's Uniform Commercial Code, Second Edition, Volume 1, page 434, where we read:

> "The concept of good faith must be relied on to determine the degree of effort required by 'best efforts.' It may be noted that the 1953 version of the Uniform Commercial Code required the use of 'due diligence' and that this was changed to 'use best efforts *in order to use language normally used in business.*'" [Emphasis supplied.]

We do not believe, therefore, that the plaintiff's agreement to use its "best efforts" was so indefinite as to make the agreement unenforceable. The evidence clearly shows that during the period of the agreement the plaintiff did radio and newspaper advertising of defendant's products; that plaintiff's president did attend certain winter shows to display and promote the defendant's equipment; and that the plaintiff was represented at the defendant's dealership schools. The plaintiff also hired an extra employee who spent a considerable amount of his time selling the defendant's products, and the record shows that throughout the period of the agreement between the parties the plaintiff sold approximately $24,000 worth of defendant's equipment. We therefore are unable to hold that the agreement fails, as a matter of law, because of lack of consideration or mutuality.

We next will consider defendant's contention that the evidence produced by the plaintiff to prove damages was incompetent and inadmissible and that, as a matter of law, damages could not be ascertained from such evidence. Generally, the measure of damages for the breach of a contract giving an agent an exclusive selling territory, where the principal invades such territory, is the amount of profits or commissions which the agent is deprived of by the principal's breach. 3 Am.Jur.2d Agency, Sec. 260, p. 625; Sparks v. Reliable Dayton Motor Car Co., 85 Kan. 29, 116 P. 363 (1911); E. J. Brach & Son v. Stewart, 139 Miss. 818, 104 So. 162 (1925); Monaco v. Pepperidge Farms, Inc., 94 N.J.Super. 39, 226 A.2d 741 (1967); Unita Oil Refining Co. v. Ledford, 125 Colo. 429, 244 P.2d 881 (1952). When the fact of injury has been proved with reasonable certainty, the fact that the amount of damages may be hard to prove does not prevent the jury from awarding damages.

In this case, to establish its damages, the plaintiff proved a number of sales in its territory by agents of the defendant during the period of plaintiff's exclusive contract, and before plaintiff's contract had been terminated. The defendant asserts that because plaintiff failed to establish the exact amount of profit made by such agents, damages would be speculative and uncertain. It contends that the mere fact that plaintiff might have made thirty per cent on such sales, had plaintiff itself made them, does not prove what profits the plaintiff would have realized if it had made the sales because many of defendant's dealers take trade-in equipment or sell for less than the recommended retail price, in which event the profit of the retailer is less than the ordinary commission of thirty per cent. Plaintiff claimed that it was entitled to damages of approximately $9,000. The jury, however, allowed the plaintiff only $3,000 by its verdict.

Uncertainty as to the amount of damages does not preclude recovery, and mathematical certainty as to the amount of recovery is not necessary. If a reasonable basis for computing an approximate amount of damages is provided, that is all

that the law requires. Tobin v. Union News Co., 13 N.Y.2d 1155, 247 N.Y.S.2d 385, 196 N.E.2d 735 (1964); Monaco v. Pepperidge Farms, Inc., supra.

■ It has been held that where damages obviously have been suffered and where no definite evidence is available for the determination of the amount of damages for a breach of contract, the best evidence which circumstances will permit is all that the law requires. Grass v. Big Creek Development Co., 75 W.Va. 719, 84 S.E. 750 (1915).

In Parker v. Levin, 285 Mass. 125, 188 N.E. 502, 90 A.L.R. 1446 (1934), the court held that an award of substantial damages was proper even though the damages could not be computed with any exactness, where in the nature of things and under the circumstances of the case a breach of contract would cause substantial damages and where it could not be urged that no basis existed for any damages or that an award of more than nominal damages was clear speculation.

■ Thus the uncertainty which prevents recovery of damages is the uncertainty as to the fact of damages, not the uncertainty as to the amount thereof. Where it is reasonably certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery or prevent the jury from awarding damages. The proof must show with reasonable certainty that the plaintiff suffered damages and that such damages resulted from defendant's wrongful breach. Where the cause of and existence of damages have been established with sufficient certainty, recovery is not going to be denied because the exact amount of damages is difficult to ascertain, and in such case fixing the amount of damages will be left to the jury in the exercise of its sound discretion under proper instructions from the court.

■ One who has breached his contract should not be permitted to escape liability for such breach merely because the amount of damages is somewhat uncertain. There was no uncertainty as to the fact of damages in this case; there was uncertainty only as to the exact amount thereof. It is the uncertainty of the fact of damages, and not the uncertainty of the amount of damages, for which the law prohibits recovery.

■ As has already been pointed out, the amount of plaintiff's commission for sales made in its territory, had the sales been made at the suggested retail price without trade-ins, would have been approximately $9,000. The jury awarded the plaintiff $3,000 by its verdict. We find no error in the award so made.

The final issue to be determined on this appeal is whether the trial court committed such numerous errors, perhaps somewhat insignificant in themselves but which, viewed in a combined and collective sense, deprived the defendant of a fair trial. We have already discussed some of the alleged errors upon which the defendant bases its demand for a new trial. In addition to the specifications of error already considered, the defendant asserts:

1. That the court erred in its instructions to the jury, in that such instructions referred to tort liability rather than liability for breach of contract;

2. That the court erred in instructing the jury that it is the duty of a person who has suffered a detriment to exercise ordinary care to avoid and minimize the resulting damages and that if he fails to do so, he cannot recover damages for any detriment suffered which could have been prevented by the exercise of such care, the defendant claiming that such instruction was a misstatement of the law of avoidable consequences;

3. That the court erred in instructing the jury that in the event it should return a verdict awarding damages to the plaintiff, interest may be awarded in the jury's discretion "from the date of the wrongdoing," the defendant asserting that this

instruction is outside the scope of the issues since interest was not demanded by the plaintiff in its pleadings and, further, that this instruction, by inference, interjects the issue of punitive damages into the case by the use of the word "wrongdoing" rather than that such damages should be based upon breach of contract;

4. That the court abused its discretion in refusing to submit a special interrogatory to the jury as to specific items of damage, as demanded by the defendant; and

5. That the court erred in refusing to allow the defendant to cross-examine the plaintiff's witness and prime stockholder on the plaintiff's pleadings.

We now will consider these allegations of error in the order above set forth.

We have very carefully reviewed the instructions and have considered them as a whole. We find that there is no merit to the defendant's contention that they make reference to tort liability rather than contract liability. As hereinafter will be pointed out, the use of the word "wrongdoing" in the instruction might refer to breach of contract as well as to a tort. We therefore find no merit in this specification of error.

We also find to be without merit the defendant's claim of error in the court's instruction to the jury that it is the duty of a person who has suffered a detriment to exercise ordinary care to avoid or minimize the resulting damages. The instruction as given by the court was:

"It is the duty of a person who has suffered a detriment to exercise ordinary care to avoid loss or minimize the resulting damages. If he fails to do so, he cannot recover damages for any detriment suffered which could have been prevented by the exercise of such care."

This court discussed the doctrine of avoidable consequences in Stetson v. Investors Oil, Inc., 140 N.W.2d 349 (N.D. 1966). We find no error in the instruction

as given by the court in this case. It is a correct statement of the law of avoidable consequences, and the defendant's claim of error in the giving of the instruction is without merit.

Defendant next claims that the court's instruction on allowing interest on damages was erroneous because it was outside the scope of the issues, and the instruction further was erroneous because by inference the court in the instruction had interjected the issue of punitive damages into the case by use of the word "wrongdoing" rather than "breach of contract."

The instruction of which the defendant complains was given as follows:

"In the event you return a verdict awarding damages to the Plaintiff, interest thereon at a rate not greater than four percent per annum from the date of the wrongdoing may be awarded in your discretion."

The appellant is in error in stating that the plaintiff failed to demand interest in its complaint. The plaintiff clearly did pray for damages and interest. As to the right of the plaintiff to interest, we find that decisions vary in different jurisdictions on the matter of allowance of interest in breach of contract cases. Some courts permit interest from the date on which the breach occurs. Cities Service Gas Co. v. Christian, 340 P.2d 929 (Okl.1959). Other courts hold that where the amount of liability has not been determined, and it is necessary that a jury fix that amount, interest is not recoverable until the amount is established by the verdict. Employers Liability Assurance Corp. v. Morse, 261 Minn. 259, 111 N.W.2d 620 (1961).

Our statutes provide that every person who is entitled to recover damages in an amount certain or capable of being made certain by calculation, on a particular day, is also entitled to recover interest on such sum from that day. Sec. 32–03–04, N.D. C.C. If the rate of interest has not been

agreed upon by the parties, it shall be four per cent per annum.  Sec. 47–14–05, N.D. C.C.

Thus, whether or not interest might be awarded to the plaintiff by the jury in its discretion, should it find that the defendant had breached the contract, would depend upon whether the damages for such breach were certain or capable of being made certain by calculation, on a particular day.  The agreement of the parties did not provide that moneys due the plaintiff on sales of defendant's equipment should be made at definite times.  In this case, the amount due the plaintiff was uncertain, unliquidated, and disputed.  Generally, the recovery of interest on an unliquidated claim which is the subject of reasonable controversy, and the amount of which claim is incapable of being determined by computation, may be allowed only from the date of determination of the exact amount due.  Thus interest should not be allowed on an unliquidated or disputed claim for breach of contract until the amount due for such breach is definitely determined.  25 C.J.S. Damages § 52b, p. 795.  It therefore was erroneous for the court to allow interest on the amount awarded the plaintiff prior to the entry of the judgment, which determined the amount due for the breach.

The defendant also contends that the use of the word "wrongdoing" in the trial court's instruction interjected the issue of punitive damages into the case. Black's Law Dictionary defines the word "wrong" as "a violation of the legal rights of another."  A breach of contract clearly is a violation of the legal rights of another. Thus the word "wrongdoing," as used by the court in the instruction, can be held to mean a violation of the legal rights of the plaintiff by the defendant's breach of contract.

"Wrongdoing" has been held to include a violation of one's rights under a contract. Daurizio v. Merchants' Despatch Transp. Co., 152 Misc. 716, 274 N.Y.S. 174 (1934). Breach of contract could be considered a

wrongful act.  Application of Chiappinelli-Marx, Inc., 32 Misc.2d 621, 223 N.Y.S.2d 943 (1961).  A wrongful act would include any act which would infringe upon the rights of another, unless it be done in the exercise of an equal or superior right. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24, at 35 (1954).  We therefore hold that the use of the term "wrongdoing" by the trial court was not error.

It next is asserted that the trial court abused its discretion in refusing to submit special interrogatories to the jury on specific items of damage, as requested by the defendant.  Rule 49(a), North Dakota Rules of Civil Procedure, provides that the court "in its discretion" may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.  To support its contention that it was error for the trial court to refuse to submit such special interrogatories, the defendant cites the Ohio case of McCarthy v. Young, Ohio App., 161 N.E. 2d 546 (1958).  We would point out that in the Ohio case, the issue was whether requested instructions should have been given. In this case, the issue is whether the jury should have been requested to return a special verdict.  Since our rule specifically provides that the matter of requiring the jury to return such special verdict in the form of written findings upon each issue of fact is within the sound discretion of the trial court, we find that the court's refusal to request the jury to make a special finding upon each issue of fact was not an abuse of that discretion.

The defendant's final specification of error is that the trial court erred in refusing to permit the defendant to cross-examine the plaintiff's witness and principal stockholder on the plaintiff's pleadings. Specifically, the defendant complains that such ruling by the court hindered the defendant from attacking the credibility of the plaintiff's principal witness in regard to the variance of the alleged "exclusive

territory" as between the pleadings and the plaintiff's answers to interrogatories and to the witness's testimony on both direct and cross-examination regarding the alleged exclusive area. While courts generally favor permitting a wide latitude on cross-examination, the scope of cross-examination must necessarily be left largely to the discretion of the trial court. Hellstrom v. First Guaranty Bank, 54 N.D. 166, 209 N W. 212, 45 A.L.R. 1487 (1926); Peterson v. Bober, 79 N.D. 300, 56 N.W.2d 331 (1952); Mevorah v. Goodman, 79 N.D. 443, 57 N. W.2d 600, 49 A.L.R.2d 825 (1953); Killmer v. Duchscherer, 72 N.W.2d 650 (N.D.1955).

In this case, a reading of the record indicates that the defendant, on cross-examination, notwithstanding the court's ruling, had ample opportunity to bring to the jury's attention any variances between the plaintiff's pleadings and the testimony of the plaintiff's principal witness on direct examination. Although it is not necessary to reproduce the testimony verbatim, the defendant was able to elicit, without objection, the following in regard to the plaintiff's alleged exclusive territory:

"Q. What you stated in your complaint is not correct then?

"A. No, I don't think so according to that."

Since the defendant did have an opportunity to bring this discrepancy to the jury's attention, we do not believe that the error now claimed by the defendant was prejudicial. The error, if any, was harmless to the defendant's case.

For reasons stated herein, the judgment against the defendant is modified to eliminate interest on the amount of the judgment prior to the date of the verdict. As so modified, the judgment is affirmed. No costs are allowed to either party.

PAULSON, ERICKSTAD, KNUDSON and TEIGEN, JJ., concur.