TOKLES & SON, INC., APPELLEE, *v.* MIDWESTERN
INDEMNITY COMPANY, APPELLANT.

[Cite as *Tokles & Son, Inc. v. Midwestern
Indemn. Co.* (1992), 65 Ohio St.3d 621.]

622

(No. 91–2384—Submitted November 9, 1992—Decided December 31, 1992.)

624

*Rogers & Godbey Co., L.P.A., George C. Rogers* and *James D. Godbey,* for appellee.

*Schell & Schaefer, Stephen A. Schaefer* and *Thomas T. Schell,* for appellant.

_____

HADLEY, J.

## I

### Corporate Officer's Testimony on Value of Corporate Property

Central to this case is the value of a tractor-trailer unit which is the subject of a theft loss claim and whether expert testimony is necessary to determine that value. It is a general rule of evidence that before one may testify as to his opinion on the value of property, one must qualify as an expert. *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 65 O.O.2d 374, 304 N.E.2d 891.

Some items are complex and their value is intermingled with fact and opinion. In addition, the item may not be available for appraisal. So, out of necessity, nonexperts are often permitted to enlighten the jury with their own opinions concerning the value of these items.

The question then arises as to where the line is to be drawn in permitting such testimony.

Evid.R. 701 provides:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

One exception to the rule requiring the testimony of an expert concerning the value of objects has developed in the case of owners of personal property because it is presumed that owners are generally quite familiar with their property and its value. In the past, owners have been permitted to testify on value by virtue of their ownership alone. *Morris v. Huber* (App.1933), 15 Ohio Law Abs. 71, 73. In *Bishop v. East Ohio Gas Co.* (1944), 143 Ohio St. 541, 546, 28 O.O. 470, 472, 56 N.E.2d 164, 166, this court stated:

" * * * When market value cannot be feasibly obtained, a more elastic standard is resorted to, sometimes called the standard of value to the owner. This doctrine is a recognition that property may have value to the owner in exceptional circumstances which is the basis of a better standard than what the article would bring in the open market.

"The Ohio rule is stated in 17 Ohio Jurisprudence, 473, Section 379:

" 'It is established in Ohio that the owner of personal property, because of such ownership, has a sufficient knowledge of its value to be qualified to give an opinion thereon which will be some evidence of the actual value, though not conclusive. * * *' "

Ownership may involve an intimate knowledge of the nature, quality, cost, and condition of the property. However, ownership of property may in other cases constitute very little, if any, qualification to form an opinion as to the value of the property.

We are now asked to consider whether a shareholder/officer of a small family-owned corporation whose knowledge of certain corporate property is tantamount to that of an owner must qualify as an expert in order to testify as to its value.

An examination of the many cases regarding ownership testimony from various jurisdictions indicates that owners of property have been permitted to testify not merely because they are owners, but rather because, due to that ownership, they are presumed to have special knowledge of the value of their own property. See, *e.g., Hellstrom v. First Guar. Bank of Bismarck* (1926), 54 N.D. 166, 209 N.W. 212; *Carlson Equip. Co. v. Internatl. Harvester Co.* (C.A.8, 1983), 710 F.2d 481, 484; *Johnson's Apco Oil Co., Inc. v. Lincoln* (1979), 204 Neb. 397, 282 N.W.2d 592; *Blais–Porter, Inc. v. Simboli* (1988), 402 Mass. 269, 521 N.E.2d 1013.

Corporations are established as separate legal entities for various purposes. Family business operations will often incorporate merely to limit liability or to gain favorable tax treatment. Privately owned items are then transferred to that corporation.

When considering the owner-opinion rule as the sole basis for permitting nonexpert testimony of value, we note that a shareholder of a corporation is an owner. However, stock ownership alone does not imply knowledge sufficient to assist the trier of fact in determining the value of any corporate asset. Therefore, an officer or shareholder of a corporation is not presumed to be familiar with corporate property solely by virtue of occupying a corporate office or owning stock in the corporation.

On the other hand, in the case of a closely held or family-type corporation, it does not seem logical to exclude the testimony of a former owner, quite familiar with those items recently transferred from his or her private ownership to that of the corporation, regarding those same items now that he or she is just a shareholder/officer of the corporation. That person's knowledge concerning the items is at least the same as before.

As an artificial person, a corporation does not speak on its own, but, rather, only through the authorized acts of its agents or alter egos, the officers charged with its management. Many of these officers, especially in a small closely held corporation, will have personal knowledge regarding the assets of the corporation. When the items of property owned by a corporation of this type are few, that personal knowledge will likely be considerable and can greatly assist a jury in determining the value of the property. We know of no reason for withholding information from a jury's consideration or for requiring a corporate officer to qualify as an expert in all cases before testifying as to the value of corporate property.

In *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 348, 513 N.E.2d 737, 741, we said:

"There is no logical basis for distinguishing between owners of freehold estates in land and owners of personal property, on the one hand, and owners of leasehold estates in land, on the other. Because the owner-opinion rule applies to owners of both real and personal property, it should apply as well to an owner of a leasehold estate.

"We hold that a lessee of real property is competent to give opinion testimony as to the rental value of the leased premises. The weight accorded to such testimony is, of course, a matter to be determined by the trier of fact." (Footnote and citation omitted.)

Similarly, the benefit of the owner-opinion rule should not be denied to a closely held corporation which cannot speak itself but which can convey its owner-opinion by a qualified officer, and we so hold.

If an officer or shareholder of a closely held corporation is permitted to testify as to value without being qualified as an expert, it should not be solely because of his title or ownership of stock, but in the main because he, aided by his experience, has some particular means of forming an intelligent and correct judgment as to the value of the property in question beyond that which is possessed by people generally. An officer, or shareholder of a closely held corporation who has acquired knowledge of the corporate property tantamount to that of an owner by virtue of having purchased, or dealt with, the property as if he were the individual owner may testify as to its value.

This means that the witness must show that he is familiar with the property itself and that he has current sufficient knowledge of the value of the item by, for example, demonstrating a firsthand knowledge of the characteristics of the property, its actual and potential uses and its condition or by showing other meaningful experience in dealing with the item.

Whether such a witness may give an opinion as to value without qualifying as an expert is a preliminary question to be decided by the trial judge, who shall consider all the facts and circumstances relating to the individual or corporate ownership.

The trial court discounted Tim's testimony regarding value, which consisted in part of Tim's statement at trial that the tractor and trailer were valued at $55,000 at the time of the loss. The trial court concluded that this testimony alone was not sufficient to show the value of the unit and that reasonable minds could come to but one conclusion, which was adverse to Tokles & Son.

We find, from a review of the record, that there was probative evidence of value which should have been submitted for the jury's consideration. Thus, we affirm the court of appeals in reversing the trial court on that issue.

## II

### Resignation of Corporate Office

In its fourth proposition of law, Midwestern argues that Susan's relinquishing of her corporate shares in E & T Investment was not evidence that she intended to or did resign her officer position of president of the corporation. In its fifth proposition of law, Midwestern argues that, since Susan did not resign her presidency, Tokles & Son was required to show that she did not consent to Spahr's use of the truck, and since no such showing was made, there was no proof of a "theft." The court of appeals concluded that " * * * reasonable minds could conclude that Susan Tokles had relinquished her position as corporate stockholder and president of E & T Investment, Inc., and, therefore, her 'consent would [not] be relevant.' " (Bracketed material *sic.*)

The trial court refused to grant a directed verdict because reasonable minds could differ as to whether Susan resigned her corporate office of president, thereby leaving that decision for the jury and making her consent irrelevant until that determination was made. We agree with the trial court and reverse that part of the court of appeals' decision which stated that reasonable minds could conclude that Susan had relinquished the corporate office of president.

In order to become an officer, one need not be a shareholder. See R.C. 1701.64. From the evidence presented to the trial court, Tokles & Son has demonstrated that, upon incorporation of E & T Investment, Susan was designated president of the corporation. Although there was evidence presented to support a finding that Susan transferred all of her *shares* in the corporation, there is no requirement that officers be shareholders to retain their position as officers. Thus, there was not a scintilla of evidence to

support a finding that Susan had resigned her position of president. There-fore, we find the fourth proposition of law to have merit.

Turning to Midwestern's fifth proposition of law, we find it to be not well taken. Midwestern's argument would require Tokles & Son to prove a negative, that Susan did not consent to Spahr's use of the unit. If Midwest-ern's defense to Tokles & Son's claim of breach of contract is that Spahr had permission to use the unit, then Midwestern had the burden of proof to demonstrate that Spahr had authority from a corporate officer on the date of the alleged theft loss. Therefore, this proposition of law is overruled.

## III

### Bad Faith

In its sixth proposition of law, Midwestern argues that the trial court should have granted its pretrial motion for partial summary judgment on Tokles & Son's allegation in the complaint that Midwestern acted in bad faith in refusing to pay the requested claim. We agree.

In granting a motion for summary judgment, the court must be satisfied that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

We have recognized that an insurer owes a duty of good faith to its insured in the processing, payment, satisfaction, and settlement of the insured's claims. *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347; *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315; *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, 525 N.E.2d 783; *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228. In *Said*, we stated that a cause of action for the tort of bad faith exists:

" * * * when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal. Intent that caused the failure may be inferred and imputed to the insurer when there is a reckless indifference to facts or proof reasonably available to it in considering the claim.

" 'No lawful basis' for the intentional refusal to satisfy a claim means that the insurer lacks a reasonable justification in law or fact for refusing to

satisfy the claim. *Where a claim is fairly debatable the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim."* (Emphasis added.) *Id.* at 699–700, 590 N.E.2d at 1236.

Therefore, to grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim. Such a standard is not contradictory to Civ.R. 56. Civ.R. 56(C) states that summary judgment is appropriate only where there is no genuine issue of material fact. To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim.

Based upon *Said, supra,* and our review of the evidentiary materials the trial court had before it in ruling upon the motion for summary judgment,[3] we find that the trial court erred in denying Midwestern's pretrial motion for summary judgment. The evidentiary materials indicate that the facts underlying Tokles & Son's theft loss were subject to fair debate, and Tokles & Son failed to present any evidence that Midwestern had actual knowledge of a lack of a reasonable justification for refusing the claim or that Midwestern intentionally failed to determine whether there was any such justification.

Midwestern presented evidence that it was reasonably justified in denying Tokles & Son's theft loss claim. First, the evidentiary materials demonstrate that there was a genuine dispute over the representations made at the time the tractor and trailer unit was added to the business auto policy between Midwestern and Tokles & Son. It is questionable whether the unit was in

---

3. Although the court of appeals stated that the materials included "the affidavits of Susan Tokles (Mims) and Timothy Tokles," we have not found any affidavit of Timothy Tokles included as part of the record prior to the trial court's December 5, 1988 decision. Further, we do not consider the statement of Susan Tokles Mims entitled "affidavit," as there was no legally sufficient affidavit of Susan Tokles Mims filed prior to December 5, 1988. An affidavit must be sworn to before someone who has authority to administer oaths in order to give legal force to the statement as an affidavit. *State v. Lanser* (1924), 111 Ohio St. 23, 26–27, 144 N.E. 734, 735. Because Civ.R. 56(C) requires a court to consider only the evidence mentioned in the rule, the statement of Susan Tokles Mims was not a proper consideration in the determination of Midwestern's motion for partial summary judgment.

Tim's possession as he claimed on February 21, 1986, the day he requested that the tractor and trailer be added to the policy. Also, Tim requested limited coverage on the tractor and trailer because, he claimed, he planned to sell it. Until such time, Tim stated, the unit would be kept behind Tokles & Son in a "fenced lot." After an extensive investigation, Tule stated in his affidavit that in a February 17, 1987 statement by Tim[4] to Dave Sokolowski, Tim confirmed that the truck was being used on a trip lease "at the end of" February 1986. This acknowledgment was contradictory to the statement Tim made to Lawson on February 21, 1986, that the unit was going to be stored and sold. Tule stated in his affidavit that had Midwestern known the unit would be used for long-haul trucking, it would not have issued coverage because Midwestern did not write such policies.

Finally, Midwestern's investigation revealed that Tokles & Son's claim was not made promptly after the loss, as required by its policy.[5] Tim first reported the tractor and trailer stolen on February 22, 1986, to the Toledo police. He next reported the unit stolen in a criminal complaint filed in Toledo Municipal Court on July 2, 1986. Five months later, on December 4, 1986, the day before the insurance on the unit was to expire, he reported the unit stolen to Midwestern.

Therefore, since the claim was fairly debatable based on a genuine dispute between the insurer and the insured concerning the facts giving rise to the claim, Midwestern could refuse the claim and not be liable to Tokles & Son for a lack of good faith in denying the claim.

## IV

### Sua Sponte Dismissal of Midwestern's Counterclaim

In its seventh proposition of law, Midwestern argues that the trial court improperly dismissed its counterclaim, without an adjudication of its merits, after it dismissed Tokles & Son's bad faith claim after trial. Tokles & Son appears to argue that since Midwestern's counterclaim is based on a tort not recognized in Ohio ("reverse bad faith"), the trial court was correct in

---

4. Only facts which would be admissible in evidence can be stated in affidavits and relied upon by the trial court when ruling upon a motion for summary judgment. Civ.R. 56(E). The recorded statement between Sokolowski and Tim Tokles would be admissible into evidence, as non-hearsay. Evid.R. 801(D)(2)(a).

5. The policy issued by Midwestern to Tokles & Son states in part:
   "The insurance provided by this policy is subject to the following conditions:
   "A. YOUR DUTIES AFTER ACCIDENT OR LOSS.
      "1. You must promptly notify us or our agent of any accident or loss. You must tell us how, when, and where the accident or loss happened. You must assist in obtaining the names and addresses of any injured persons and witnesses."

dismissing it. We find that the trial court improperly dismissed Midwestern's counterclaim and we reach this conclusion without recognizing a new tort in Ohio.

Midwestern argues that even if we do not recognize the new tort of reverse bad faith, its counterclaim alleges fraud. Fraud consists of six elements: a representation of a fact, which is material, made falsely—either with knowledge of its falsity or utter disregard and recklessness as to falsity—with an intent to mislead, with justifiable reliance thereupon, and a resulting injury. *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 208, 556 N.E.2d 490, 495. Midwestern's answer and counterclaim aver, with particularity, the elements of fraud.

We find that the trial court improperly dismissed the counterclaim without an adjudication on the merits. A trial court can dismiss a claim with prejudice *sua sponte* only in limited circumstances. A court may dismiss a claim if the party asserting it fails to prosecute its action or fails to comply with the Civil Rules or a court order. Civ.R. 41(B)(1) and (C).

"The law favors deciding cases on their merits unless the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order." *Schreiner v. Karson* (1977), 52 Ohio App.2d 219, 223, 6 O.O.3d 237, 239, 369 N.E.2d 800, 803.

Herein, there is no evidence that Midwestern failed to prosecute its fraud action, comply with the Civil Rules, or obey a court order. Also, there is no evidence that Midwestern's conduct was "negligent, irresponsible, contumacious or dilatory," which would warrant a dismissal with prejudice.

For these reasons, the trial court's dismissal with prejudice of Midwestern's counterclaim was error. Therefore, we reverse the judgment of the court of appeals which upheld the trial court's dismissal of Midwestern's counterclaim.

## V

### "Reverse Bad Faith"

In its last proposition of law, Midwestern urges us to recognize the tort of "reverse bad faith," whereby an insurer could assert a cause of action against an insured when the insured willfully submits a fraudulent claim and then sues the insurer in tort for the insurer's "bad faith" in refusing to pay the fraudulent claim. This court has never recognized such a tort and refuses to do so now. As the holder of the purse strings, the insurer has a certain built-in protection from such evils. On the other hand, the insured, who often finds himself in dire financial straits after the loss, must have the equal footing which is provided by the ability to sue the insurer for bad faith. There are

other avenues for the insurer to pursue in the event that an insured submits a fraudulent claim. An insurer drafts the policy, can refuse the insured's claim, and could assert a cause of action against the insured for fraud.

For these reasons, this proposition of law is rejected.

Midwestern's first, second, third, fifth, and eighth propositions of law are overruled. Midwestern's fourth, sixth, and seventh propositions of law are sustained. This cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SWEENEY, HOLMES and DOUGLAS, JJ., concur.

MOYER, C.J., WRIGHT and H. BROWN, JJ., dissent.

RONALD E. HADLEY, J., of the Third Appellate District, sitting for RESNICK, J.

HERBERT R. BROWN, J., dissenting. I dissent because the majority's decision confuses the law which governs the qualification of an expert to testify concerning property values.

The standard for testifying on the value of property was well established before today's decision. The value of property is a matter of opinion. Before one may give opinion testimony, one must be qualified as an expert. *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 159–160, 65 O.O.2d 374, 378–379, 304 N.E.2d 891, 896–897; 1 McCormick, Evidence (4 Ed. Strong Ed.1992) 41–53, Sections 11 and 12. Experts must be qualified in accordance with Evid.R. 702 and the body of case law that rule was intended to restate. See Staff Notes (1980) to Evid.R. 702. Where the subject is property valuation, there is one exception. *Owners* of property may testify as to value without being qualified under Evid.R. 702. *Bishop v. East Ohio Gas Co.* (1944), 143 Ohio St. 541, 28 O.O. 470, 56 N.E.2d 164.

The majority now sees fit to expand the exception. Shareholders and officers of closely held corporations may now testify as to value if they have "acquired knowledge of the corporate property tantamount to that of an owner by virtue of having purchased, or dealt with, the property as if he were the individual owner."

The standard is illusory. There is no typical "owner." Some owners deal extensively with their property and have great knowledge of it. Others know little or nothing about the value of their property, even if they have occasionally "dealt with" it (whatever that means). The owner exception already admits wildly speculative opinion testimony. It is a mistake to expand the problem.

In establishing this undesirable new exception to the law governing expert testimony, the majority has failed to follow legal precedent. The appellate court in this case, and the appellate court in *Akron v. Hardgrove Ent., Inc.* (1973), 47 Ohio App.2d 196, 1 O.O.3d 275, 353 N.E.2d 628, relied on *Marlie Trading, Inc. v. Biggs Boiler Works Co.* (1960), 112 Ohio App. 428, 16 O.O.2d 328, 176 N.E.2d 301, which states:

"This rule of evidence, with reference to the owner of personal property testifying to the value of his property, *does not, in our opinion, extend to a corporate officer* just because he is an officer of the corporation which owns the property about which value testimony is sought * * *. Of course, a corporate officer who has special knowledge, or is qualified as an expert, may always testify concerning the value of property; *but he does so not because of his position, but because of his special qualification.*" (Emphasis added.) *Id.* at 432, 16 O.O.2d at 330, 176 N.E.2d at 304.

The *Hardgrove* court applied the above reasoning to closely held corporations. It is not an officer's title in a closely held corporation which allows him to testify. Rather, it is the special knowledge *which qualifies him as an expert* that permits him to render an opinion to the value of the property.

In the case before us, the plaintiff failed to offer admissible evidence regarding the value of the tractor and trailer. In fact, if the "standard" established in paragraph four of the syllabus is applied, no admissible evidence of value can be found in the record below.

Tim Tokles purchased the truck in 1981 and soon after relinquished possession to Mark Spahr. Four years elapsed before Tokles used the truck again in May 1985. After this he did not see the truck again until February 1986. He had no knowledge of the mileage on the truck and did not drive it because it would not start. It then "disappeared" a day later. The next and last time Tokles saw the truck before filing a claim was in June 1986. It is this knowledge that the majority finds "tantamount to that of an owner *by virtue of having purchased, or dealt with,* the property as if he were the individual owner." (Emphasis added.) This case demonstrates that the new "standard" is not really a standard at all.

This confusion could and should have been avoided by adherence to established rules which govern the admissibility of expert testimony. Adherence to Evid.R. 702 is a better and more workable way to determine the qualifications of witnesses proffered to testify as to the value of property.

Thus, the trial court properly granted defendant's motion for directed verdict. On this issue, I would reverse the decision rendered by the Court of Appeals for Lucas County and reinstate that of the trial court.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.