[Cite as *State vs. Sowers*, 2018-Ohio-2367.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2017-0064 |
| SABIN J. SOWERS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                              Pleas, Case No.  CR2017-0162


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       June 18, 2018


APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

D. MICHAEL HADDOX                        ERIC J. ALLEN
PROSECUTING ATTORNEY                     THE LAW OFFICE of ERIC J. ALLEN, LTD.
GERALD V. ANDERSON II                    4605 Morse Road
ASSISTANT PROSECUTOR                     Suite 201
27 North Fifth Street, P.O. Box 189      Gahanna, Ohio  43230
Zanesville, Ohio   43702-0189

*Wise, P. J.*

{¶1}    Defendant-appellant Sabin J. Sowers appeals his conviction on one count of receiving stolen property entered in the Muskingum County Court of Common Pleas following a jury trial.

{¶2}    Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}    The relevant facts and procedural history are as follows:

{¶4}    On March 13, 2017, Ronald Scurlock noticed that large truck batteries were missing from pallets, as well as from various vehicles in and outside of the buildings on the premises of a business he owns in Trinway, Ohio. On March 14, 2017, he noticed more batteries missing. Scurlock started calling local scrapyards in search of the batteries. When he spoke with Fred Polk of Polk's Scrapyard he learned that someone had brought in a large quantity of batteries of the type that Scurlock reported stolen. Scurlock went to Polk's to verify if they were his batteries and to find out who had brought the batteries in.  Polk informed Scurlock that two males in a truck brought in a truck bed full of batteries. Polk said that he thought it was suspicious that men had this many large truck batteries.  Polk said that because he was suspicious, he unloaded the batteries onto their own pallet and set them aside. Polk stated that Appellant Sabin J. Sowers provided his ID and signed the receipt for payment for scrapping the batteries. Polk paid Appellant $498.00 for 1,780 lbs of batteries. Polk's has video surveillance of Appellant weighing the truck in and weighing it out after unloading the batteries.

{¶5}    Scurlock said he was able to confirm that the batteries were his based on the quantity and types. He also had batteries cut from his vehicles, instead of being

disconnected, and there was a battery that still had cables connected to the battery but with the wire cut that would have attached to the vehicle.

{¶6}    A deputy arrived and took a report, inventoried the types of batteries, the quantities, and the value of each battery Appellant had brought into Polk's. A surveillance video showed that the person who brought in the batteries drove a black Ford Ranger with a distinct sticker on the tailgate. Polk would not divulge the name of the person who brought in the batteries, but he indicated to Scurlock that the person came from up north. Scurlock interpreted that to mean Dresden, a small conjoining village to Trinway. Based on this information, Scurlock drove around Dresden looking for the truck, which he found parked outside Appellant's apartment. Inside the truck bed was an additional load of batteries. Scurlock went to the Dresden Police Station and asked Chief Caldwell to return with him, showing the Chief the truck full of batteries.

{¶7}    Chief Caldwell was familiar with the truck, the residence, Appellant, and Appellant's co-defendant, Shawn King. He knew that the truck belonged to Shawn King's brother, who was incarcerated at the time, and he knew that Shawn King had been using the truck. He also had personally seen Shawn King and Appellant driving around in that truck multiple times, and knew that Shawn King was living with Appellant. He also knew that Appellant lived at the apartment where the truck was parked. Chief Caldwell had Scurlock leave the premises and had called other officers to respond to the scene. While at the scene, Shawn King exited Appellant's residence to approach the truck. Inside the truck were many batteries, the same type as those stolen from Scurlock's business and scrapped at Polk's.

{¶8} On or about April 5, 2017, Sabin J. Sowers, Defendant-Appellant ("Appellant"), was indicted on one count of Receiving Stolen Property ($1,000 - $7,500), in violation of R.C. §2913.51(A), a felony of the fifth degree. Also indicted was Appellant's co-defendant, Shawn King.

{¶9} On July 28, 2017, a jury trial commenced in this case. At the trial, the jury heard testimony from Scurlock, who went into detail with regard to the type, quantity and value of the stolen batteries.

{¶10} On July 29, 2017, the jury returned a verdict of Guilty on the sole count of the indictment.

{¶11} On September 11, 2017, the trial court sentenced Appellant to twelve (12) months in prison and ordered him to pay restitution in the amount of $498.00.

{¶12} Appellant now appeals, raising the following assignments of error on appeal:

## ASSIGNMENTS OF ERROR

{¶13} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL ON THE RECEIVING STOLEN PROPERTY CHARGE, A FELONY OF THE FIFTH DEGREE, BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION.

{¶14} "II. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### I., II.

{¶15} Appellant challenges his conviction as being against the manifest weight and sufficiency of the evidence. We disagree.

**{¶16}**  The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶17}**  In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶18}**  We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d

212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶19}** Here, Appellant was convicted of one count of receiving stolen property, in violation of R.C. 2913.15(A), which provides:

(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

**{¶20}** R.C. §2913.15(C), further provides:

(C) Whoever violates this section is guilty of receiving stolen property. Except as otherwise provided in this division or division (D) of this section, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is one thousand dollars or more and is less than seven thousand five hundred dollars, if the property involved is any of the property listed in section 2913.71 of the Revised Code, receiving stolen property is a felony of the fifth degree. …

**{¶21}** Appellant herein argues that the evidence was not sufficient to establish that the stolen property exceeded $500.00. Appellant argues that the only evidence as to value was the scrap value of $498.00 received as payment from Polk's. Appellant further argues his conviction is against the manifest weight of the evidence.

**{¶22}** As to the value of the stolen items, R.C. § 2913.61 states:

(D) The following criteria shall be used in determining the value of property or services involved in a theft offense:

(1) The value of an heirloom, memento, collector's item, antique, museum piece, manuscript, document, record, or other thing that has intrinsic worth to its owner and that either is irreplaceable or is replaceable only on the expenditure of substantial time, effort, or money, is the amount that would compensate the owner for its loss.

(2) The value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, which property is not covered under division (D)(1) of this section and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality.

{¶23} Here, we find the stolen batteries fall within D(2). As such, the valuation for such items is the replacement value of the stolen property. At trial, Mr. Scurlock testified as to his familiarity and experience in purchasing these types of batteries, as well as their value. He testified as to the quantity and value of each type of battery stolen. Further, he testified that the value of the stolen batteries exceeded $1,000 but was less than $5,000.

{¶24} Although the general rule is that one must be qualified as an expert to testify as to value, an "owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." *Tokles & Son, Inc. v. Midwestern Indemnity Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, at paragraph two of the syllabus, citing *Bishop v. East Ohio Gas Co.* (1944), 143 Ohio St. 541, 56 N.E.2d 164.

**{¶25}** We further find the state provided sufficient evidence that the batteries scrapped by Appellant were the batteries stolen from Scurlock. Scurlock was able to testify as to the type and quantity of the stolen batteries, as well as the fact that some of the batteries were removed by cutting the wires. Polk testified that these large truck-type batteries are rarely brought in to his scrap yard, especially not in such a large quantity. Further, the batteries that were brought in matched the description and quantity of those stolen from Scurlock, some with cut wires still attached to the terminals. These batteries were brought in to the scrapyard within 24 hours of batteries being stolen from Scurlock. Further, the truck on the surveillance video matched the truck located outside Appellant's apartment. Finally, the truck, when located, had more batteries in the truck bed.

**{¶26}** Based on the evidence and testimony provided at trial, we find that Appellant's conviction for receiving stolen property was not against the manifest weight and sufficiency of the evidence

**{¶27}** Appellant's assignments of error are overruled.

**{¶28}** Accordingly, the judgment of the Muskingum County Common Pleas Court is affirmed.

By: Wise, P. J.
Hoffman, J., and
Baldwin, J., concur.

JWW/d 0612